**United States Court of Appeals for the Tenth Circuit**
OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Patrick J. Fisher, Jr.
Clerk of Court

Douglas E. Cressler
Chief Deputy Clerk

FILED
U.S. DISTRICT COURT

2005 JUL 26  P 1: 21

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

July 21, 2005

Mr. Markus B. Zimmer, Clerk
U. S. District Court for the District of Utah
350 South Main Street
Room 204
Salt Lake City, UT 84101

    Re:    04-4058, Freightliner v. Central Refrigerated
           04-4066, Freightliner v. Central Refrigerated
           Dist/Ag docket: 2:03-CV-562-BSJ, and 2:03-CV-563-BSJ.

Dear Mr. Zimmer:

    Enclosed for the clerk of the trial court is a certified copy of the order and judgment filed in this case which is issued as the mandate of this court. See Fed. R. App. P. 41(a). Please file it in the records of your court.

    Please contact this office if you have questions.

                                Sincerely,

                                PATRICK FISHER
                                Clerk

                           By:  [signature]
                                Deputy Clerk

PF:mt

cc:   J. Thomas Beckett
      Dianna M. Gibson
      James F. Williams
      Chantell L. Taylor
      Peter W. Billings Jr.
      Gary E. Jubber
      James E. Till

**FILED**
United States Court of Appeals
Tenth Circuit

**June 2, 2005**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| In re: SIMON TRANSPORTATION SERVICES, INC., and DICK SIMON TRUCKING, INC., | |
| Debtors. | Nos. 04-4058, 04-4066 (D. Ct. Nos. 2:03-CV-562-BSJ & 2:03-CV-563-BSJ) (D. Utah) |
| FREIGHTLINER, LLC, | |
| Appellee-Cross/Appellant, | |
| v. | |
| CENTRAL REFRIGERATED SERVICE, INC., | A true copy Teste  Patrick Fisher Clerk, U.S. Court of Appeals, Tenth Circuit |
| Appellant-Cross/Appellee, | By [signature] Deputy Clerk |
| v. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Appellee. | |

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This appeal arises out of the bankruptcy of Simon Transportation Services Inc. and Dick Simon Trucking, Inc. (collectively "Dick Simon"). The appeal concerns the ownership of trade-back agreements ("TBAs") entered into by Dick Simon and Appellee/Cross-Appellant Freightliner, LLC. Appellant/Cross-Appellee Central Refrigerated Service, Inc. ("Central") argues that it acquired these TBAs when it purchased substantially all of Dick Simon's assets. The Bankruptcy Court, however, found that Central had not purchased the TBAs. Central appealed this order to the District Court, which affirmed the Bankruptcy Court's decision. During this appeal to the District Court, the Bankruptcy Court authorized a separate auction of the TBAs, in which Freightliner placed the highest bid. Central has timely appealed the District Court's ruling, but it did not stay the subsequent auction of the TBAs. We take jurisdiction under 28 U.S.C. § 1291, but because Central neither stayed nor appealed the subsequent auction of the TBAs to Freightliner, this appeal is moot and we therefore DISMISS.

## I. BACKGROUND

On February 25, 2002, Dick Simon filed for Chapter 11 bankruptcy. Less than a month later, it filed a motion with the Bankruptcy Court seeking to sell substantially all of its assets. On April 8, 2002, pursuant to the conditions for sale established by the Bankruptcy Court, Central purchased these assets for $51 million. As part of this sale, Central received hundreds of trucks that Dick Simon

had purchased from Freightliner. Dick Simon and Freightliner had negotiated TBAs, which are essentially option contracts, on over four hundred of these trucks. Under the terms of these TBA contracts, Dick Simon could sell the trucks covered by the TBAs back to Freightliner at a fixed percentage of the original purchase price. Central thought that it had purchased these TBAs from Dick Simon along with the trucks.

After the Bankruptcy Court issued an order approving the sale, Freightliner filed a motion to reconsider this order, claiming that it did not receive notice of the sale. Freightliner argued that because it was a party to the TBAs, it should have been notified if these contracts were being sold. The Bankruptcy Court issued an order finalizing the sale of all the assets except the TBAs. The court then held a hearing to determine whether the TBAs were included in the assets sold to Central and, if so, whether the sale should be set aside because of the lack of notice to Freightliner.

The Bankruptcy Court found that Central had not purchased the TBAs because, inter alia, they were not listed among the assets at auction. Consequently, the court authorized a separate auction of the TBAs. Although Central filed a notice of appeal with the District Court and sought a stay of this auction, it failed to post the bond necessary for the District Court to issue the stay. As a result, the TBAs were auctioned and Freightliner submitted the

winning bid.

Central then appealed to the District Court, arguing that the Bankruptcy Court erred in finding that it had not purchased the TBAs. The District Court affirmed the Bankruptcy Court, concluding that the TBAs were not part of the sale. Central timely appealed this decision, arguing now that both the Bankruptcy Court and the District Court erred in finding that it had not purchased the TBAs.

## II. DISCUSSION

Central contends that Freightliner's purchase of the TBAs should be reversed; or, alternatively, that it is entitled to the proceeds of the sale. We cannot address the merits of these arguments until we determine that the appeal presents a live case or controversy. *See In re BCD Corp.*, 119 F.3d 852, 856 (10th Cir. 1997). Therefore, we begin by considering whether this appeal is moot, which is determined by whether a court can issue an effective remedy in this case. *See In re Osborn*, 24 F.3d 1199, 1203 (10th Cir. 1994).

We cannot order a reversal of the sale of the TBAs to Freightliner. Congress has limited the availability of appellate review of asset sales like the TBA auction that were made under § 363 of the Bankruptcy Code. The Code states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith,

-4-

> whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).[1] As is clear, Congress has placed strict limitations on courts' ability to reverse an asset sale when the authorization for that sale is appealed: A sale cannot be set aside unless the authorization was stayed. *Id.* Because it would be contrary to the plain language of § 363(m), this Court has never set aside an asset sale when a stay has not been obtained. *See In re BCD Corp.*, 119 F.3d at 856; *In re Osborn*, 24 F.3d at 1203–04.

Of course, the current appeal contests the Bankruptcy Court's finding that the TBAs were not included in the assets acquired by Central—not the Bankruptcy Court's order authorizing the sale of the TBAs to Freightliner. Thus, it is possible to argue that § 363(m)'s stay requirement does not apply. The issue on appeal, then, is whether the Bankruptcy Court's equitable powers are such that it can revoke the sale of assets in what amounts to an end run on § 363(m)'s stay requirement by appealing a ruling about the contents of a previous asset sale.

A bankruptcy court's equitable powers are not this broad. Even though the current appeal does not contest the order authorizing the sale of the TBAs, the

---

[1] For purposes of this appeal, we do not need to decide whether the TBAs are executory contracts. Even if the TBAs are executory contracts, and thus governed by § 365, appeal of their sale is nonetheless subject to the requirements of § 363(m). *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 497–98 (3d Cir. 1998); *In re Adamson Co.*, 159 F.3d 896, 898 (4th Cir. 1998).

stay requirement of § 363(m) must still apply or the purpose of enacting this provision would be frustrated. This provision expresses Congress's intent to promote finality of asset sales under § 363. By limiting the ability of reviewing courts to reverse asset sales, good-faith purchasers are protected from having their purchases reversed, and thus are more willing to bid for these assets. By increasing bidders' willingness to buy the debtor's assets, this provision increases the value of the assets and thus maximizes the value of the bankruptcy estate. *See In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir. 1990) (noting the "importance of encouraging finality in bankruptcy sales by protecting good faith purchasers and thereby increasing the value of the assets that are for sale."). If we were to adopt a contrary rule, we would reintroduce a level of uncertainty that Congress specifically removed. Thus, we hold that § 363(m)'s stay requirement applies in cases where a litigant seeks the reversal of an asset sale, even though the substantive issue of the appeal does not involve whether the bankruptcy court appropriately authorized the sale. As a result, Central's claim is moot insofar as it seeks reversal of the sale of the TBAs to Freightliner.

This is not to say that Central was without recourse when the Bankruptcy Court authorized the separate auction of the TBAs. Central had an opportunity to stay the order authorizing the sale of the TBAs, but it did not do so. It similarly could have appealed that order to the District Court and argued that it was entitled

to the proceeds of the sale. It did not do this either. Thus, the authorization of the sale of the TBAs is now final and may not be reversed by this Court because Central failed to stay the court's order authorizing this sale.

This appeal is moot, then, unless the Bankruptcy Court has the power to permit Central to recover the proceeds of the sale in this case. We have recognized a limited ability for third parties to recover the proceeds of an asset sale in certain circumstances, while strictly applying the rule that the sale itself cannot be reversed. *See In re BCD Corp.*, 119 F.3d at 856; *In re Osborn*, 24 F.3d at 1203–04. In *In re BCD, Corp.*, we held an appeal not moot under § 363(m), despite the failure to stay the order authorizing the sale of assets, "[b]ecause these substantial proceeds are thus segregated, [and therefore] the practical possibility of equitable relief is apparent." 119 F.3d at 856. This decision also noted that its conclusion was consistent with *In re Lloyd*, 37 F.3d 271, 273 (7th Cir. 1994), in which the Seventh Circuit held that an appeal was not moot under § 363(m) because "the proceeds from the sale of land . . . were being held pending the outcome of the Seventh Circuit's case." *See id.* Consequently, in this Circuit equitable relief is available, in the absence of a stay, when the proceeds of the sale have not been commingled with the rest of the bankruptcy estate's funds.

Central, however, cannot benefit from this line of cases. The proceeds of the sale of the TBAs to Freightliner were not segregated. The Bankruptcy Court's

equitable powers, therefore, do not extend so broadly as to allow Central to collect the proceeds of the TBA sale because limiting the exception for recovering the proceeds of a sale to cases in which the funds have been segregated is the only course consistent with the purpose of § 363(m).

Several factors favor our conclusion. First, Congress intended a sale of assets under § 363 to be final unless the sale is stayed pending appeal. The segregation of funds displays the parties' recognition that the sale is not yet final, placing all interested parties on notice. Allowing the proceeds of a sale to pass to a third party absent a stay or segregation of funds fails to place parties on notice, thereby reintroducing uncertainty to asset sales—a result Congress clearly sought to avoid. Second, allowing the proceeds of a sale to pass to a third party absent a stay or segregation of funds hampers the bankruptcy estate's ability to finalize payments to outstanding creditors. Without some mechanism—such as a stay or segregation of funds—for placing creditors on notice as to the total amount of funds available to satisfy obligations, final payments to creditors would remain uncertain. Finally, these requirements, staying the auction or segregating funds, are not overly burdensome requirements. For example, had Central appealed the Bankruptcy Court's order authorizing the sale of the TBAs to the District Court, the proceeds of the sale might have been segregated; if so, a court could then permit recovery of the funds without disturbing a transaction that the parties

believed to be final. Therefore, because the funds from the sale of the TBAs were not segregated, the Bankruptcy Court may not award them to Central.

### III. CONCLUSION

Because Central did not stay the Bankruptcy Court's authorization of the sale of the TBAs and because it does not meet the limited rule allowing for the recovery of sale proceeds, we DISMISS Central's appeal as moot. Further, Freightliner has cross-appealed the Bankruptcy Court's determination that the TBAs are executory contracts. It has consistently maintained that its argument is only relevant if the Bankruptcy Court's decision is reversed. Because we dismiss Central's appeal as moot, we similarly do not need to decide the issue raised on cross-appeal. Freightliner's cross-appeal is therefore also DISMISSED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

Nos. 04-4058, 04-4066, *Freightliner, LLC v. Central Refrigerated Service, Inc.*

MURPHY, Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that this appeal is moot. The majority errs in concluding that the commingling of the sale proceeds with the rest of the bankruptcy estate's funds renders it impossible for the court to grant effective relief. *See Golfland Entm't Ctrs, Inc. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 856 (10th Cir. 1997).

An appeal is moot and must be dismissed when it is "impossible for the court to grant any effectual relief whatever to a prevailing party." *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994) (quotation omitted). "The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 923 (9th Cir. 2004) (quotation and alteration omitted). In the present case, the Creditor's Committee claims the appeal is moot because the proceeds from the sale of the TBAs have been commingled with the other funds of the estate.

Because the Bankruptcy Code prohibits courts from affecting the validity of an asset sale unless the sale is stayed pending appeal, an appeal seeking only the reversal of an asset sale where no stay was obtained will be dismissed as moot. *See* 11 U.S.C. § 363(m). When it is possible to grant some other type of effective relief that does not affect the validity of the sale, however, an appeal is

not moot. *In re BCD Corp.*, 119 F.3d at 856. Here, as an alternative to setting aside the sale of the TBAs to Freightliner, Central seeks a monetary payment from the sale proceeds as compensation for the loss of the TBAs. "In the context of bankruptcy, any analysis of mootness must consider not only the remedies available under the Bankruptcy Code but also those that may be available under state law." *In re Osborn*, 24 F.3d at 1203. This court has therefore recognized, for instance, that monetary relief may be available under constructive trust principles. *See, e.g., In re BCD Corp.*, 119 F.3d at 857; *In re Osborn*, 24 F.3d at 1204. The availability of such relief depends primarily upon whether the proceeds from the sale have been distributed. *See In re BCD Corp.*, 119 F.3d at 857 (noting that the possibility of relief exists because "here the sale proceeds have not been disbursed").

Despite this precedent, the majority takes the position that commingling, not disbursement, is the decisive factor. Majority Op. at 7-8. In contrast to the majority's conclusion, the commingling of funds, by itself, does not remove the possibility of effective relief. *See In re BCD Corp.*, 119 F.3d at 856. Nor is the majority's approach supported by relevant case law. The majority's reliance on *In re Lloyd*, cited in *In re BCD Corp.*, 119 F.3d at 856, overlooks language in that opinion suggesting that distribution, not commingling renders an appeal moot. *Compare In re Lloyd*, 37 F.3d 271, 273 (7th Cir. 1994) (concluding that

an appeal challenging the sale of land was not moot because "the trustee informed [the court] that the proceeds from the sale of the land remaining after severance of the 'homestead' had not been distributed and were being held pending the outcome of this case"), *with* Majority Op. at 7 (citing *In re Lloyd* in support of proposition that commingling is key in question of mootness). Indeed, the factors cited by the majority in support of its conclusion actually suggest that disbursement, not commingling, is determinative. *See* Majority Op. at 8 (listing factors). The majority indicates that the segregation of funds is necessary to put the parties on notice that the sale is not yet final. *See id.* Unless an asset sale is stayed pending appeal, however, the sale is final and cannot be reversed. 11 U.S.C. § 363(m). For this reason, the majority's concern that "[a]llowing the proceeds of a sale to pass to a third party absent a stay or segregation of funds fails to place parties on notice" that a sale is not yet final, is irrelevant to the question before this court. Majority Op. at 8. The majority also expresses concern over the finality of the bankruptcy estate's payments to creditors. *Id.* Again, it is disbursement, not commingling, that finalizes payments. If funds are still available, there is no risk of upsetting any payments to creditors because those creditors have not been paid. This is true regardless of whether the funds have been commingled. Moreover, funds are available from which monetary relief can be granted to the prevailing party.

Asserting only that the sale proceeds have been commingled with the funds of the bankruptcy estate does not establish that some measure of effective relief is unavailable. Accordingly, Central's appeal is not moot and this court should reach the merits of the appeal. In light of the majority's decision and the fact that the economic result would be the same, it is sufficient to state that I would affirm the decision of the district court upholding the bankruptcy court's finding that Central did not purchase the TBAs in the initial sale.